1  Christopher H. Bayley (#010764)
   Steven D. Jerome (#018420)
2  James G. Florentine (#034058)
   Molly J. Kjartanson (#034063)
3  SNELL & WILMER L.L.P.
   One Arizona Center
4  400 E. Van Buren St., Ste. 1900
   Phoenix, AZ 85004-2202
5  Telephone: (602) 382-6000
   Email: cbayley@swlaw.com
6         sjerome@swlaw.com
          jflorentine@swlaw.com
7         mkjartanson@swlaw.com
   Attorneys for Debtor Santa Clarita, LLC

8

## IN THE UNITED STATES BANKRUPTCY COURT

9

## FOR THE DISTRICT OF ARIZONA

10

| | |
|---|---|
| In Re: | Proceedings Under Chapter 11 |
| SANTA CLARITA, LLC, | Case No. 2:20-bk-12402-MCW |
| Debtor. | Adv. No. |
| SANTA CLARITA, LLC, a Delaware limited liability company; BERMITE RECOVERY, LLC, a Delaware limited liability company; REMEDIATION FINANCIAL, INC., an Arizona corporation, | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| CITY OF SANTA CLARITA, a California political subdivision; BLUE OX HOLDINGS, LLC, a Delaware limited liability company; 33 NORTH DEVELOPMENT GROUP, a California corporation, | |
| Defendants. | |

24     Plaintiffs Santa Clarita, LLC ("Debtor" or "SCLLC"), Bermite Recovery, LLC

25  ("Bermite"), and Remediation Financial, Inc. ("RFI", and together with the Debtor and

26  Bermite, the "Plaintiffs") for their complaint against the City of Santa Clarita ("City"), Blue

27  Ox Holdings, LLC ("Blue Ox"), and 33 North Development Group ("33 North", and

28

together with Blue Ox and the City, the "<u>Defendants</u>") hereby allege, aver, and state as follows:

**<u>NATURE OF THE ACTION</u>**

The City, Blue Ox, and 33 North are hindering Plaintiffs' ability to sell the Property to Prologis. Plaintiffs bring this action to alert the Court and Defendants that Defendants' pattern of obfuscating and derailing Plaintiffs' efforts to obtain funding sources to retire debts, pay property taxes, develop the Property, and sell the Property must end. Specifically, Plaintiffs seek damages, in an amount to be proven at trial, for Defendants' inference with Plaintiffs' efforts to develop and/or sell the Property.

Since approximately 2017, Plaintiffs have actively sought out funding sources to, among other things, retire all debts on the Property (defined below), pay all property taxes, and develop the Property. Numerous lenders, joint venture partners, and potential purchasers were interested in partnering with the Plaintiffs to develop the Property and/or purchase the Property. As detailed below, the Defendants actively conspired to derail the Plaintiffs from obtaining financing and develop the Property. The City and Blue Ox repeatedly made false statements regarding the ownership of the Property, the status of the entitlements on the Property, and Blue Ox's interest in the Property. The actions of the Defendants forced the Debtor to file the Administrative Case (defined below) and seek relief under Chapter 11 of the Bankruptcy Code. But for Defendants continuing and pervasive actions to hinder, delay, and derail Plaintiffs efforts to retire all debts on the Property, and develop and/or sell the Property, the Debtor would not have filed the Administrative Case and the Debtor and Bermite would have developed or sold the Property for an amount in

4820-08889838

excess of $286 million.

**PARTIES, JURISDICTION, AND VENUE**

1.      The SCLLC is the debtor in Case No. 2:20-bk-12402-MCW (the "Administrative Case") and is a Delaware limited liability company.

2.      Pursuant to 11 U.S.C. §§ 1107(a) and 1110, the Debtor is managing its business, assets, and bankruptcy estate as a debtor-in-possession.

3.      Bermite is a Delaware limited liability company.

4.      RFI is an Arizona corporation and is the sole member of the Debtor and Bermite.

5.      The City is a municipality chartered and existing under the laws of the State of California and is a political subdivision of the State of California.

6.      On February 19, 2021, the City, through counsel, appeared in the Administrative Case and requested notice of papers served in the Administrative Case. *See* Case No. 2:20-bk-12402-MCW at Dkt. No. 93.

7.      This Court has personal jurisdiction over the City.

8.      Upon information and belief, Defendant Blue Ox is a Delaware limited liability company and is an affiliate of 33 North.

9.      As a result of, among other things, Blue Ox's actions described herein and Blue Ox's appearances and participation in the Administrative Case, this Court has personal jurisdiction over Blue Ox.

10.      Upon information and belief, Defendant 33 North is a California corporation and is an affiliate of Blue Ox.

3

4820-08889838

11. As a result of, among other things, 33 North's actions described herein and 33 North's principal(s)' participation in the Administrative Case, this Court has personal jurisdiction over 33 North.

12. This Court has jurisdiction to hear this adversary proceeding as the claims asserted by Plaintiffs are core proceedings under 28 U.S.C. §§ 157(b)(2)(A) and (O) and 1334. To the extent that any of the claims in this adversary proceeding are non-core proceedings, Plaintiffs consent to the entry of final orders or judgments by this Court.

13. This judicial district is the proper venue for this adversary proceeding under 28 U.S.C. §§ 1408 and 1409, as this adversary proceeding arises under, and is in connection with, the Administrative Case, which is currently pending before this Court in this judicial district.

## THE SPECIFIC PLAN, DEVELOPMENT AGREEMENT, AND PLAINTIFFS' ACQUISITION OF THE PROPERTY

14. On or about April 25, 1995, the City and Whittaker Porta Bella Development, Inc. ("Whittaker Porta Bella") executed that certain Porta Bella Specific Plan (the "Specific Plan") to entitle a master planned community on the Property (as defined below).

15. On or about March 28, 1996, the City and Whittaker Porta Bella Development, Inc. executed that certain "Development Agreement By and Between The City of Santa Clarita and Whittaker Porta Bella Development, Inc.", recorded with the Los Angeles County Recorder at Number 96-535033 (the "Development Agreement"). A true and correct copy of the Development Agreement is attached hereto as Exhibit 1.

16. The Development Agreement vested Whittaker Porta Bella with the right to,

4

1. As a result of, among other things, 33 North's actions described herein and 33 North's principal(s)' participation in the Administrative Case, this Court has personal jurisdiction over 33 North.

2. This Court has jurisdiction to hear this adversary proceeding as the claims asserted by Plaintiffs are core proceedings under 28 U.S.C. §§ 157(b)(2)(A) and (O) and 1334. To the extent that any of the claims in this adversary proceeding are non-core proceedings, Plaintiffs consent to the entry of final orders or judgments by this Court.

3. This judicial district is the proper venue for this adversary proceeding under 28 U.S.C. §§ 1408 and 1409, as this adversary proceeding arises under, and is in connection with, the Administrative Case, which is currently pending before this Court in this judicial district.

## THE SPECIFIC PLAN, DEVELOPMENT AGREEMENT, AND PLAINTIFFS' ACQUISITION OF THE PROPERTY

14. On or about April 25, 1995, the City and Whittaker Porta Bella Development, Inc. ("Whittaker Porta Bella") executed that certain Porta Bella Specific Plan (the "Specific Plan") to entitle a master planned community on the Property (as defined below).

15. On or about March 28, 1996, the City and Whittaker Porta Bella Development, Inc. executed that certain "Development Agreement By and Between The City of Santa Clarita and Whittaker Porta Bella Development, Inc.", recorded with the Los Angeles County Recorder at Number 96-535033 (the "Development Agreement"). A true and correct copy of the Development Agreement is attached hereto as Exhibit 1.

16. The Development Agreement vested Whittaker Porta Bella with the right to,

4

among other things, develop the Property.

17.     In 1998, RFI formed the Debtor.

18.     RFI formed the Debtor for the sole purpose of acquiring that certain real property which consists of approximately 972 acres of undeveloped land generally located at 221116 Soledad Canyon Road, Santa Clarita, California 91350 (the "SCLLC Parcel").

19.     Thereafter, the Debtor purchased the SCLLC Parcel from Whittaker Corporation ("Whittaker").

20.     Upon the Debtor's purchase of the SCLLC Parcel from Whittaker, Whittaker Porta Bella assigned its interest in the Development Agreement to Plaintiffs.

21.     In addition to forming the Debtor, RFI also formed Bermite in 1998.

22.     RFI originally formed Bermite to acquire certain non-real estate assets contemporaneously with the Debtor's acquisition of the Property from Whittaker.

23.     After Bermite's formation, the Debtor's transaction with Whittaker was amended, thereby obviating Bermite's originally contemplated role.

24.     In or around March 2000, Bermite acquired title to approximately 32 acres of real property adjacent to the SCLLC Parcel from Whittaker (the "Bermite Parcel", and together with the SCLLC Parcel, the "Property").

25.     The Debtor and Bermite are the current owners of the Property.

## THE ALLEGED BLUE OX DEBT

26.     On or about December 7, 1998, the Debtor and Porta Bella Lender, LLC ("PBL") executed that certain "Loan Agreement" (the "PBL Loan Agreement"). A true and correct copy of the PBL Loan Agreement is attached hereto as Exhibit 2.

4820-08889838

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

27.     Pursuant to the PBL Loan Agreement, PBL agreed to make a loan to Plaintiff in the amount of up to $35 million dollars (the "PBL Loan"). *See* Ex. 2 at p. 1.

28.     To evidence the PBL Loan, on or about December 7, 1998, the Debtor executed that certain "Nonrecourse Secured Promissory Note" in PBL's favor (the "PBL Promissory Note"). A true and correct copy of the PBL Promissory Note is attached hereto as Exhibit 3.

29.     Pursuant to the PBL Promissory Note, the Debtor agreed to pay PBL "the principal sum of Thirty-Five Million and no/100 Dollars (U.S.) ($35,000,000) or so much thereof as may be advanced and outstanding, together with interest on each advance from the date it is disbursed until the date it is repaid[.]" *See* Ex. 3 at p. 1.

30.     On or about January 3, 1999, the Debtor executed that certain "Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing" (the "PBL Deed of Trust", and together with the PBL Loan Agreement and PBL Promissory Note, the "PBL Loan Documents"). A true and correct copy of the PBL Deed of Trust is attached hereto as Exhibit 4.

31.     The PBL Deed of Trust was recorded on January 11, 1999 as Document No. 99-0031197 with the Office of the Recorder of Los Angeles County, California.

32.     On or about February 29, 2000, the Debtor and Bermite obtained a loan in the original principal balance of $22.3 million (the "KFI Loan") from Kennedy Funding, Inc. ("KFI").

33.     To evidence the KFI Loan, on or about February 29, 2000, the Debtor and Bermite executed that certain "Promissory Note" in KFI's favor (the "KFI Promissory

Note"). A true and correct copy of the KFI Promissory Note is attached hereto as <u>Exhibit 5</u>.

34. On or about February 26, 2000, the Debtor and Bermite executed that certain "Deed of Trust, Assignment of Leases, Security Agreement, and Fixture Filing" (the "<u>KFI Deed of Trust</u>", and together with the KFI Promissory Note, the "<u>KFI Loan Documents</u>"). A true and correct copy of the KFI Deed of Trust is attached hereto as <u>Exhibit 6</u>.

35. The KFI Deed of Trust was recorded on March 1, 2000 as Document No. 00-0307235 with the Office of the Recorder of Los Angeles County, California.

36. In or around March 2001, as a result of Steadfast Insurance Company ("<u>Steadfast</u>") remittance of $22.3 million to KFI pursuant to a certain lender insurance policy, KFI assigned the KFI Loan Documents to Steadfast.

37. To hold the KFI Loan, Steadfast formed Steadfast Santa Clarita Holdings, LLC ("<u>Steadfast Santa Clarita</u>").

38. On or about June 13, 2017, Blue Ox entered into that certain "Purchase and Sale Agreement" (the "<u>PBL Loan Acquisition Agreement</u>") with PBL. A true and correct copy of the PBL Loan Acquisition Agreement is attached hereto as <u>Exhibit 7</u>.

39. Pursuant to the PBL Loan Acquisition Agreement, Blue Ox acquired the PBL Loan Documents.

40. At around the same time that Blue Ox entered into the PBL Loan Acquisition Agreement, Steadfast Santa Clarita purportedly transferred (i) the KFI Loan Documents and (ii) other amounts allegedly owing to Steadfast Santa Clarita pursuant to a settlement agreement entered into between the Debtor and Knight Piesold & Company (the "<u>Knight</u>

4820-08889838

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Settlement Agreement") to Blue Ox.

41.     On or about June 13, 2017, Blue Ox became the alleged primary senior secured creditor of, and lender to, the Debtor and Bermite, with all of the attendant rights, duties, and obligations at law and equity of a secured creditor of, and lender to, the Debtor and Bermite.

**THE CITY CONFIRMS THAT THE DEVELOPMENT AGREEMENT'S TERM EXTENDS THROUGH JANUARY 1, 2021**

42.     On or about October 22, 2019, Plaintiffs sent the City that certain "Request for Certificate of Compliance Regarding Development Agreement By and Between The City of Santa Clarita and Whittaker Porta Bella Development, Inc." (the "Request for Certificate").

43.     On or about November 4, 2019, the City sent Plaintiffs that certain "Response to Request for Certificate of Compliance Regarding Development Agreement By and Between The City of Santa Clarita and Whittaker Porta Bella Development, Inc." (the "Response to Request for Certificate").  A true and correct copy of the Response to Request for Certificate is attached hereto as Exhibit 8.

44.     Pursuant to the Response to Request for Certificate, the City confirmed that (i) the Development Agreement remained in effect through January 1, 2021 and (ii) Plaintiffs were not in default under the Development Agreement.  *See* Ex. 8.

**DEFENDANTS' INTERFERENCE WITH PLAINTIFFS' PROSPECTIVE RELATIONSHIPS WITH POTENTIAL LENDERS, JOINT VENTURE PARTNERS, AND PURCHASERS OF THE PROPERTY**

45.     Beginning in or around 2017, Plaintiffs sought funding to, among other things, take out the current debt on the property, pay all property taxes on the Property, and

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

8

develop the Property.

46.    As part of this process, Plaintiffs met with potential lenders, joint venture partners, and purchasers of the Property.

47.    On several occasions, Plaintiffs' potential lenders, joint venture partners, and purchasers contacted the City as part of their due diligence to confirm Plaintiffs' representations regarding the Property's entitlements were accurate.

48.    Despite the fact that Plaintiffs have vested rights under the Development Agreement, the City, upon information and belief, told the potential lenders, joint venture partners, and purchasers and/or their agents and appraisers that the Property was not entitled and that the entitlement process had to re-start in its entirety.

49.    Upon information and belief, the City's statements to potential lenders, joint venture partners, and purchasers and/or their agents and appraisers were false.

50.    As the direct and proximate result of the City providing false information, potential lenders, joint venture partners, and purchasers walked away from the Property and declined to partner with, or provide financing to, Plaintiffs.

51.    For example, in the fourth quarter of 2018, Plaintiffs were in the process of obtaining a loan from Silver Arch Capital Partners ("Silver Arch").

52.    Upon information and belief, during the time in which Plaintiffs were in the process of obtaining a loan from Silver Arch, the City spoke with Silver Arch's appraiser, Tony Petruccello ("Petruccello").

53.    As a result of the City's discussions with Petruccello, Petruccello reported that the entitlement timeline for the Property would likely be in excess of five years upon

9

environmental remediation (anticipated, at that time, in 2019).

54.     Upon information and belief, the information the City provided to Petrucello (and thus Silver Arch) was directly contrary to the accurate information that Plaintiffs provided to Silver Arch regarding the status of the entitlements on the Property.

55.     Relying on the City's false representations, Silver Arch declined to fund the contemplated loan to Plaintiffs.

56.     Thereafter, Plaintiffs began negotiations with other potential lenders and capital partners, including, but not limited to, Clarion Capital Partners, LLC ("Clarion").

57.     Plaintiffs accurately disclosed, among other things, the status of the entitlements on the Property to Clarion.

58.     Upon information and belief, as part of Clarion's due diligence, a representative of Clarion called Tom Cole, a representative of the City, to confirm the entitlements on the Property.

59.     Upon information and belief, Mr. Cole, on behalf of the City, made intentional misstatements regarding, among other things, the status of the entitlements of the Property to Clarion.

60.     Specifically, upon information and belief, Mr. Cole represented to Clarion, among other things, that it's a "complete start-over" for entitlements on the Property.

61.     Upon information and belief, Clarion declined to further pursue a joint venture agreement with Plaintiffs because of Mr. Cole's (*i.e.*, the City's) intentionally false and misleading statements to Clarion.

62.     At or around the same time that Clarion declined to partner with, or provide

4820-0888-9838

funding to, Plaintiffs, Clarion, upon information and belief, provided proprietary and confidential project information to Mr. Cole without Plaintiffs' permission.

63. Upon information and belief, Mr. Cole advised Clarion that he intended to reach out to KB Home ("KB") and Spirit Properties to inquire whether those entities' letters of intent regarding the Property were legitimate.

64. After Clarion declined to partner with, or provide financing to, Plaintiffs as a result of the City's intentionally false and misleading statements to Clarion, Plaintiffs continued its efforts to secure financing for the Property.

65. In late April 2020, one of Plaintiffs' prospective lenders hired CBRE to appraise the Property.

66. Upon information and belief, James Chow, a representative of the City, represented to CBRE that the Property was not entitled and that it would have to go through a new entitlement process.

67. Upon information and belief, Mr. Chow further represented that the "new developer" for the Property would be 33 North.

68. Upon information and belief, the City has provided false information to Plaintiffs' potential lenders, joint venture partners, and purchasers and/or their agents and appraisers because the City wants to divest Plaintiffs of ownership of the Property.

69. Upon information and belief, the City wants 33 North and/or Blue Ox to own and/or develop the Property.

70. For example, in 2018, the City assisted Blue Ox in obtaining an "Agreement and Covenant Not to Sue" (the "PPA") with respect to the Property from the California

11

4820-0888-9838

Department of Toxic Substances Control ("DSTC").

71.     Upon information and belief, the City assisted Blue Ox in obtaining the PPA despite the fact that Blue Ox does not own the Property.

72.     Upon information and belief, Blue Ox has represented that it owns, or will soon own, the Property during quarterly meetings with the City.

73.     Plaintiffs have instructed Mr. Cole that to have no further communications with Blue Ox's representatives regarding the Property.

74.     Upon information and belief, Mr. Cole and the City have ignored Plaintiffs' requests and are working with Blue Ox on a new plan for Plaintiffs' Property.

### THE CITY'S REJECTION OF RFI'S REQUEST FOR AN EXTENSION AND PLAINTIFFS' NOTICE OF DEFAULT TO THE CITY

75.     Section 7(i) of the Development Agreement provides that the term of the Development Agreement "shall extend twenty (20) years from the date of all conditions have been satisfied, but in no event shall the Term expire later than January 1, 2021, unless said Term is otherwise terminated, modified or extended as permitted or required by this Agreement or by mutual consent of the parties hereto." *See* Ex. 1, § 7(i).

76.     Section 7(e) of the Development Agreement provides that the "Term of this Agreement shall be extended by a period of time equal to the number of days during which such party is prevented from, or is unreasonably interfered with…." *See* Ex. 1, ¶ 7(e).

77.     On or about July 23, 2020, RFI sent that certain "Request for Time Extension and Certification of Compliance regarding Development Agreement Between the City of Santa Clarity and Whittaker Porta Bella Development, Inc. (the "Development Agreement") with the extended Term" (the "Request for Time Extension") to the City. A

12

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

4820-08889838

true and correct copy of the Request for Time Extension is attached hereto as <u>Exhibit 9</u>.

78.     Pursuant to the Request for Time Extension, RFI requested (i) an automatic time extension to the Term (as defined in the Development Agreement) of the Development Agreement, pursuant to Section 7(e) and 7(i) of the Development Agreement and (ii) an updated letter confirming that the Term of the Development Agreement had been extended through January 1, 2026.  *See* Ex. 9.

79.     On or about August 7, 2020, the City rejected RFI's requests set forth in the Request for Time Extension (the "<u>Rejection of Request for Time Extension</u>").

80.     On or about October 15, 2020, Plaintiffs notified the City that the City was in default under the Development Agreement (the "<u>Notice of Default</u>").  A true and correct copy of the Notice of Default is attached hereto as <u>Exhibit 10</u>.

## <u>THE DEBTOR'S COMMENCEMENT OF THE ADMINISTRATIVE CASE AND PLAINTIFFS' POST-PETITION NOTICE OF CLAIM AND NOTICE OF AUTOMATIC EXTENSION</u>

81.     On or about November 12, 2020, the Debtor commenced the Administrative Case.

82.     On or about December 7, 2020, Plaintiffs, pursuant to California Government Code §§ 810–996.6, asserted claims against the City for (i) wrongfully refusing to extend the term of the Development Agreement, (ii) breach of good faith and fair dealing, (iii) intentionally interfering with contractual relationships, and (iv) conspiring with Blue Ox and 33 North to ensure those entities receive title to the Property (the "<u>Notice of Claim</u>"). A true and correct copy of the Notice of Claim is attached hereto as <u>Exhibit 11</u>.

83.     On or about December 22, 2020, the Debtor notified the City that the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Development Agreement automatically was extended until January 1, 2024 (the "Notice of Automatic Extension"). A true and correct copy of the Notice of Automatic Extension is attached hereto as Exhibit 12.

84. On or about January 4, 2021, the City rejected the claims Plaintiffs presented in the Notice of Claim (the "Notice of Rejection"). A true and correct copy of the Notice of Rejection is attached hereto as Exhibit 13.

## DEFENDANTS' POST-PETITION INTERFERENCE WITH PLAINTIFFS' PROPOSED SALE OF THE PROPERTY TO PROLOGIS

85. On February 10, 2021, the Debtor filed that certain *Chapter 11 Plan of Reorganization of Santa Clarita, LLC* in the Administrative Case. *See* Dkt. No. 81.

86. On May 19, 2021, the Debtor and Prologis, L.P. ("Prologis") entered into that certain Purchase and Sale Agreement and Joint Escrow Instructions (the "PSA") wherein Prologis agreed to purchase the Property for $286,000,000.

87. Thereafter, on June 2, 2021, the Debtor and Prologis entered into a First Amendment to Purchase and Sale Agreement (the "Amended PSA"). A true and correct copy of the Amended PSA is attached hereto as Exhibit 14.

88. The $286,000,000 purchase price for the Property under the Amended PSA is severely impaired as a result of the City's, Blue Ox's, and 33 North's interference with Plaintiffs' efforts to obtain financing for the Property.

89. Plaintiffs are informed and believe that the true value of the Property is well in excess of $286,000,000.

90. The City, Blue Ox, and 33 North continue to interfere with Plaintiffs' Property, specifically Plaintiffs' sale of the Property to Prologis, post-petition.

14

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

91.     For example, in connection with its due diligence on the Property, Prologis requires information from the City regarding, among other things, the entitlements on the Property.

92.     In reliance on the mistaken belief that Plaintiffs do not have the appropriate right, title, and interest in the Property (which is the subject of the Amended PSA), the City refuses to interact with Prologis regarding the Property.

93.     Indeed, upon information and belief, the City has repeatedly advised third parties that it believes that Blue Ox either currently owns, or will soon own, the Property even though Blue Ox is only a lender to, and disputed secured creditor of, the Debtor and Bermite.

94.     The City refuses to provide information regarding the Property to Prologis unless (i) Prologis submits written questions to the City for the City to answer at some point in the future or (ii) Plaintiffs and their principals agree to a waiver and release agreement pursuant to which Plaintiffs and their principals "knowingly, voluntarily, freely, and expressly assume[] the[] risks [of the City discussing the Property with Prologis], even to the extent they arise from the active negligence and/or false statements of the City and/or its agents or employees."

95.     By way of further example, on or about May 19, 2021, Michael Stern, a principal of Blue Ox, contacted Prologis seeking to speak with a representative of Prologis regarding the PSA.

96.     Brendan Kotler, Prologis' Senior Vice President of Capital Deployment, and Blake Kelley, Prologis' Vice President and Investment Officer, returned Mr. Stern's call.

4820-0888\`9838

97.    Upon information and belief, Mr. Stern tried to persuade Prologis (*i.e.*, Mr. Kotler and Mr. Kelley) that Prologis would not be able satisfy the conditions for closing of the PSA.

98.    Upon information and belief, Defendants' post-petition actions are in furtherance of their plan to divest Plaintiffs of control of the Property so that Blue Ox and/or 33 North obtain ownership of the Property.

<u>COUNT I</u>

**(Tortious Interference with Prospective Business Advantage)**

**(Plaintiffs v. The City and Blue Ox)**

99.    Plaintiffs repeat and reallege each and every assertion of its Complaint as if set forth herein.

100.    Plaintiffs had prospective economic relationships with potential lenders, joint venture partners, and purchasers of the Property, including, but not limited to, Silver Arch, Clarion, and Prologis.

101.    Plaintiffs' economic relationships with potential lenders, joint venture partners, and purchasers of the Property, including, but not limited to, Silver Arch, Clarion, and Prologis, likely would have provided future economic benefit to Plaintiffs because those entities would have provided Plaintiffs with, among other things, financing for the Property.

102.    Upon information and belief, the City and Blue Ox were aware of Plaintiffs' prospective economic relationships with potential lenders, joint venture partners, and purchasers of the Property, including, but not limited to, Silver Arch, Clarion, and Prologis.

103.    The City and Blue Ox intentionally took the improper actions set forth herein to disrupt Plaintiffs' prospective economic relationships with potential lenders, joint

16

4820-08889838

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

venture partners, and purchasers of the Property, including, but not limited to, Silver Arch, Clarion, and Prologis.

104. Indeed, upon information and belief, the City intentionally made false and misleading statements to Silver Arch, Clarion, and others because, upon information and belief, the City wants to divest Plaintiffs of the Property and wants Blue Ox and/or 33 North to own the Property.

105. The City also refused to provide information regarding the Property to Prologis unless (i) Prologis submits written questions to the City for the City to answer at some point in the future or (ii) Plaintiffs and their principals agree to a waiver and release agreement pursuant to which Plaintiffs and their principals "knowingly, voluntarily, freely, and expressly assume[] the[] risks [of the City discussing the Property with Prologis], even to the extent they arise from the active negligence and/or false statements of the City and/or its agents or employees" because, upon information and belief, the City does not want Plaintiffs to sell the Property to Prologis. Instead, the City wants Blue Ox and/or 33 North to own the Property.

106. Upon information and belief, Blue Ox has also made intentionally false statements regarding its ownership of the Property at quarterly meetings with the City in an effort to, among other things, disrupt Plaintiffs' efforts to obtain financing for the Property.

107. Additionally, Mr. Stern of Blue Ox contacted Mr. Kotler of Prologis on or about May 19, 2021 because, upon information and belief, Blue Ox wants to dissuade Prologis from purchasing the Property.

108. The City's and Blue Ox's actions described herein, including, but not limited

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

17

to, the City's false and misleading statements to Silver Arch, Clarion, and others, and Blue Ox's false statements regarding, among other things, its ownership of the Property, caused Silver Arch, Clarion, and others to decline to partner with, or provide funding to, Plaintiffs.

109.    The City and Blue Ox's actions described herein, including, but not limited to, the City's false and misleading statements regarding the entitlements on the Property and Blue Ox's false statements regarding, among other things, its ownership of the Property, also impaired the purchase price of the Property under the Amended PSA.

110.    The City's and Blue Ox's actions described herein have proximately caused economic harm to Plaintiffs in an amount to be determined at trial because the City's and Blue Ox's actions caused Silver Arch, Clarion, and others to decline to partner with, or provide funding to, Plaintiffs and because the City's and Blue Ox's actions impaired the proposed purchase price of the Property under the Amended PSA.

WHEREFORE, Plaintiffs pray for judgment and other relief against the City and Blue Ox as follows:

a.  A judgment in an amount to be determined at trial due to the City's and Blue Ox's tortious interference with Plaintiffs' prospective business advantages.

b.  Such other relief as the Court deems just and proper under the circumstances.

## COUNT II

### (Civil Conspiracy to Commit Tortious Interference with Prospective Business Advantage)

### (Plaintiffs v. Defendants)

111.    Plaintiffs repeat and reallege each and every assertion of its Complaint as if set forth herein.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    112.    Upon information and belief, the City, Blue Ox, and 33 North agreed to

2  accomplish an unlawful purpose by unlawful means and thereby agreed to accomplish a tort

3  when Blue Ox and 33 North wrongfully conspired with the City to interfere with Plaintiffs'

4  prospective economic relationships with potential lenders, joint venture partners, and

5  purchasers of the Property, including, but not limited to, Silver Arch, Clarion, and Prologis.

6

7    113.    Upon information and belief, the City, Blue Ox, and 33 North conspired to

8  interfere with Plaintiffs' prospective economic relationships with potential lenders, joint

9  venture partners, and purchasers of the Property, including, but not limited to, Silver Arch,

10  Clarion, and Prologis because Blue Ox and 33 North want to take the Property for

11  themselves and the City wants Blue Ox and/or 33 North to become the owner of the

12  Property.

13

14    114.    The City, Blue Ox, and 33 North's wrongful agreement is evidenced by the

15  City's role in assisting Blue Ox in its efforts to obtain the PPA from the DTSC.

16

17    115.    Upon information and belief, the City, Blue Ox, and 33 North's wrongful

18  agreement is further evidenced by Blue Ox's representations at quarterly meetings with the

19  City that it is the owner of the Property.

20

21    116.    Defendants committed a wrongful act pursuant to their agreement when the

22  City interfered with Plaintiffs' economic relationships with potential lenders, joint venture

23  partners, and purchasers of the Property, including, but not limited to, Silver Arch, Clarion,

24  and Prologis as described herein.

25

26    117.    Defendants' actions described herein have proximately caused economic

27  harm to Plaintiffs in an amount to be determined at trial because the City's actions caused

28

19

Silver Arch, Clarion, and others to decline to partner with, or provide funding to, Plaintiffs and because Defendants' actions impaired the proposed purchase price of the Property under the Amended PSA.

WHEREFORE, Plaintiffs pray for judgment and other relief against the City as follows:

a.   A judgment in an amount to be determined at trial due to Defendants' conspiracy to tortiously interfere with Plaintiffs' prospective business advantages.

b.   Such other and further relief as this Court or other trier of fact deems just and appropriate under the circumstances.

### COUNT III

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

**(Plaintiffs v. the City)**

118.   Plaintiffs repeats and realleges each and every assertion of its Complaint as if set forth herein.

119.   Plaintiffs, through the assignment of the Development Agreement from Whittaker Porta Bella, are parties to the Development Agreement with the City.

120.   Plaintiffs have fulfilled their obligations under the Development Agreement.

121.   Indeed, pursuant to the Response to Request for Certificate, the City acknowledged as of November 4, 2019 that Plaintiffs were not in default under the Development Agreement.

122.   There are not any unfulfilled conditions under the Development Agreement preventing the City's performance under the Development Agreement.

20

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

4820-08889838

123. As a result of the City's actions described herein, the City has taken actions that have prevented Plaintiffs from receiving the benefits under the Development Agreement.

124. For example, as described herein, the City, upon information and belief, intentionally made false and misleading statements to Silver Arch, Clarion, and others regarding, among other things, the entitlements on the Property in order to prevent Plaintiffs from (i) obtaining financing for the Property and (ii) ultimately developing the Property as permitted under the Development Agreement.

125. By way of further example, the City wrongfully refused to agree that the Development Agreement has been extended until January 1, 2026.

126. In taking such actions, the City has not acted fairly or in good faith.

127. The City's actions described herein have proximately caused economic harm to Plaintiffs in an amount to be determined at trial because, among other things, the City's actions have interfered with Plaintiffs' ability to develop the Property and to obtain financing for the Property.

WHEREFORE, Plaintiffs pray for judgment and other relief against the City as follows:

    a. A judgment in an amount to be determined at trial due to the City's breach of the covenant of good faith and fair dealing.

    b. For an award of attorneys' fees and costs pursuant to, among other things, the Development Agreement.

    c. Such other and further relief as this Court or other trier of fact deems just and

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

appropriate under the circumstances.

## **COUNT IV**

### **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

### **(Debtor and Bermite v. Blue Ox)**

128.    Plaintiffs repeats and realleges each and every assertion of its Complaint as if set forth herein.

129.    To the extent that Blue Ox acquired the PBL Loan Documents from PBL and the Knight Settlement Agreement from Steadfast Santa Clarita, the Debtor and Blue Ox are parties to the PBL Loan Documents and the Knight Settlement Agreement.

130.    To the extent that Blue Ox acquired the KFI Loan Documents from Steadfast Santa Clarita, the Debtor, Bermite, and Blue Ox are parties to the KFI Loan Documents.

131.    The Debtor under the PBL Loan Documents and the Knight Settlement Agreement and the Debtor and Bermite under the KFI Loan Documents have complied with those agreements except as their performance under those agreements has been excused.

132.    There are not any unfulfilled conditions under the PBL Loan Documents, Knight Settlement Agreement, and KFI Loan Documents preventing Blue Ox's performance under those agreements.

133.    As a result of Blue Ox's actions described herein, Blue Ox has taken actions that have prevented the Debtor under the PBL Loan Documents and Knight Settlement and the Debtor and Bermite under the KFI Loan Documents from receiving the benefits under those agreements.

134.    For example, as described herein, upon information and belief, Blue Ox has wrongfully conspired with the City and 33 North to divest Plaintiffs of ownership of the

22

4820-08889838

Property so that Blue Ox and/or 33 North can take the Property from themselves.

135.    Upon information and belief, Blue Ox has also wrongfully represented at quarterly meetings with the City that it is the owner of the Property.

136.    Blue Ox also wrongfully attempted to interfere with Plaintiffs' sale of the Property to Prologis when Mr. Stern of Blue Ox contacted Prologis on or about May 19, 2021 and, upon information and belief, tried to persuade Prologis that it would not be able to satisfy the conditions for closing of the PSA.

137.    In taking such actions, Blue Ox has not acted fairly or in good faith.

138.    Blue Ox's actions described herein have proximately caused economic harm the Debtor and Bermite in an amount to be determined at trial because, among other things, Blue Ox's actions have interfered with Plaintiffs' ability to develop the Property, obtain financing for the Property, and sell the Property to Prologis.

WHEREFORE, the Debtor and Bermite pray for judgment and other relief against Blue Ox as follows:

a.    A judgment in an amount to be determined at trial due to Blue Ox's breach of the covenant of good faith and fair dealing.

b.    For an award of attorneys' fees and costs pursuant to, among other things, the PBL Loan Documents and A.R.S. § 12-341, and A.R.S. § 12-341.01.

c.    Such other and further relief as this Court or other trier of fact deems just and appropriate under the circumstances.

23

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

4820-0888-9838

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

## <u>COUNT V</u>

### (Breach of Contract)

### (Plaintiffs v. The City)

139.     Plaintiffs repeats and realleges each and every assertion of its Complaint as if set forth herein.

140.     Plaintiffs, through the assignment of the Development Agreement from Whittaker Porta Bella, are parties to the Development Agreement with the City.

141.     Plaintiffs have fulfilled their obligations under the Development Agreement.

142.     Indeed, pursuant to the Response to Request for Certificate, the City acknowledged as of November 4, 2019 that Plaintiffs were not in default under the Development Agreement.

143.     The City breached the Development Agreement by, among other things, failing and refusing to acknowledge that the Development Agreement had been extended through January 1, 2026 when it sent Plaintiffs the Rejection of Request for Time Extension.

144.     The City's breach of the Development Agreement has proximately caused damages to Plaintiffs in an amount to be determined at trial because, among other things, Plaintiffs' breach of the Development Agreement has interfered with Plaintiffs' ability to develop the Property, obtain financing for the Property, and sell the Property to Prologis.

WHEREFORE, Plaintiffs pray for judgment and other relief against the City as follows:

a.    A judgment in an amount to be determined at trial due to the City's breach of the Development Agreement.

b.    For an award of attorneys' fees and costs pursuant to, among other things, the

24

4820-08889838

Development Agreement.

**c.** Such other and further relief as this Court or other trier of fact deems just and appropriate under the circumstances.

<u>**COUNT V**</u>

**(Declaratory Relief)**

**(Plaintiffs v. The City)**

145.   Plaintiffs repeats and realleges each and every assertion of its Complaint as if set forth herein.

146.   As described herein, the City has unreasonably interfered with, among other things, Plaintiffs' efforts to obtain financing for the Property, develop the Property, and/or sell the Property.

147.   As set forth in the Request for Time Extension, the City's unreasonable interference with Plaintiffs' efforts to obtain financing for the Property, develop the Property, and/or sell the Property resulted in an automatic extension of the Term of the Development Agreement pursuant to Sections 7(e) and (i) of the Development Agreement to January 1, 2026.

148.   The City disputes that the Term of the Development Agreement has been automatically extended to January 1, 2026 pursuant to Sections 7(e) and (i) of the Development Agreement.

149.   A ripe, continuing, actual, and justiciable controversy has arisen between Plaintiffs and the City regarding the Term of the Development Agreement.

150.   Pursuant to Fed. R. Bankr. P. 7001(9), Plaintiffs request that this Court enter

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

4820-088889838

judgment determining and declaring that the Term of the Development Agreement has been automatically extended to January 1, 2026 pursuant to Sections 7(e) and (i) of the Development Agreement.

WHEREFORE, Plaintiffs pray for judgment and other relief against the City as follows:

    a.   Pursuant to Fed. R. Bankr. P. 7001(9), a judgment determining and declaring that the Term of the Development Agreement has been automatically extended to January 1, 2026 pursuant to Sections 7(e) and (i) of the Development Agreement.

    b.  For an award of attorneys' fees and costs pursuant to, among other things, the Development Agreement.

    c.  Such other and further relief as this Court or other trier of facts deems just and appropriate under the circumstances.

## COUNT VI

**(Inverse Condemnation)**

**(Plaintiffs v City)**

151.   Plaintiffs repeats and realleges each and every assertion of its Complaint as if set forth herein.

4820-0888٩838

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

152.     Plaintiffs retained vested rights under that certain Development Agreement.

153.     Although the Development Agreement was automatically extended by its own terms, the City continues to refuse to acknowledge that Plaintiffs have continuing rights under the Development Agreement.

154.     The City's actions have damaged the value of Plaintiffs rights in its property.

155.     Additionally, through its actions and inactions, the City has been working with Blue Ox to divest Plaintiffs of their property rights.

156.     The City has deprived Plaintiffs of all beneficial uses of its property.

WHEREFORE, Plaintiffs pray for judgment and other relief against the City as follows:

a.   A judgment in an amount to be determined at trial due to the City's inverse condemnation.

b.   For an award of attorneys' fees and costs pursuant to, among other things, the Development Agreement.

c.   Such other and further relief as this Court or other trier of fact deems just and appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 2nd day of July, 2021.

SNELL & WILMER L.L.P.

By: /s/ Christopher H. Bayley
    Christopher H. Bayley
    Steven D. Jerome
    James G. Florentine
    Molly J. Kjartanson
    One Arizona Center
    400 E. Van Buren St., Ste. 1900
    Phoenix, AZ  85004-2202
    Attorneys for Debtor Santa Clarita, LLC

27

4820-088859838